### SHEARER v. TRUMBULL et al.
#### Civil Action No. 1974.

United States District Court
D. Wyoming.
May 22, 1931.*

* Received for publication March, 1949.

Will H. Thompson, of Omaha, Neb., and William E. Mullen, of Cheyenne, Wyo., for complainant.

E. Paul Bacheller and R. H. Nichols, both of Casper, Wyo., and Paul R. Greever, of Cody, Wyo., for defendants.

KENNEDY, District Judge.

This is a suit in equity in which the plaintiff seeks to foreclose a contract involving the purchase and sale of certain real estate located in the county of Park, State of Wyoming. The defendants resist the claim of plaintiff and seek by answer and cross-bill to have an accounting between plaintiff and defendants, together with an allowance of an equitable set-off against plaintiff's demands. The connection of the defendant Maude I. Trumbull with the transaction is that she is the wife of the principal defendant Robert S. Trumbull. The suit involves a complicated situation growing out of negotiations between the parties covering a period of years in which it was sought through personal contact and lengthy correspondence to bring an end to the controversy. I cannot but feel that the failure to accomplish this result is partially due to the lack of a conciliatory spirit on the part of counsel. This is a fair example of a case where counsel and the litigants on account of their familiarity with the situation ought to be better able to work out an equitable solution than the court in depending upon a mass of oral testimony, interrogatories, abstracts, deeds and a running fire of almost unlimited correspondence.

In 1919, one Solon L. Wiley entered into a contract with the defendant Robert S. Trumbull for a sale to him of what is described as the Wiley ranch and for which the consideration to be paid was $50,000. Later the plaintiff Shearer, a relative of Wiley, succeeded to the record title of the ranch in controversy and the defendant having defaulted in his payments provided in the contract, there was a modification of the original contract reducing the purchase price to $48,000, and also providing further the manner in which the payment of such amount should be made. Still later and in 1927, the defendant, being yet in default but having occupied the premises in controversy practically from the time of the execution of the original contract, purported to make with plaintiff another revision of the purchase price under the contract of sale by which it was reduced to the sum of $29,000, which amount was to be sent to a bank in Omaha and turned over to the plaintiff upon delivery of good and sufficient deeds to the premises. Disputes then arose as to the place for deposit of the money, as to the surrender of the deeds, as to the abstracts showing good title in the plaintiff, and as to the particular kind of deeds to be delivered, resulting in a general eruption between the parties and the matter finding its way into this court. Another element entering into the controversy is, that some of the houses upon the ranch property were removed by the defendant Trumbull with the consent of plaintiff to lots in the town of Cody, and mortgages upon such property given back by the defendant to the plaintiff.

Counsel for both parties have been profuse in their written briefs covering more or less technical legal points, but the court will not deal extensively with them, preferring to consider the case more largely upon the broad principles of equity in its general sense.

There can be no doubt that the defendant has been guilty of grievious and repeated defaults in carrying out his contract, consisting in failure to pay taxes, to turn over funds received as royalties on oil contracts in connection with the property, to keep the buildings properly insured, to make payments upon the purchase price both of principal and interest, notwithstanding the fact that during all the period since the contract originated the defendant has occupied and used the premises. The plaintiff has not been entirely free from fault in the matter of perfecting the titles to the property, although as the evidence tends to show, he was making reasonable effort to comply with the requirements of the defendant in this respect.

The defendant claims that because of the refusal of the plaintiff to deliver warranty deeds to meet a deposit in a bank at Cody, Wyoming, of the purchase price, he, defendant, suffered a severe loss and claims a damage thereby which would more than off-set the entire contract price of the ranch property. If the plaintiff should be required to give up the entire ranch property contracted for by defendant, with practically a nominal sum only paid on the purchase price and to pay the defendant damages in addition thereto, it would seem like a travesty on justice and a sordid kind of equity. Under the modified contract of 1927, I am of the opinion that the acceptance of the offer of defendant to pay the sum of $29,000 required the deposit of such sum in the bank designated by plaintiff before defendant would be entitled to recover any damages on account of the failure to deliver deeds, as the acceptance of the offer made, specifically provided that such money should be deposited in an Omaha bank; whereas the evidence shows that the deposit which the defendant claims was made for the purpose of meeting the purchase price and upon which the claim for damages rests, was made in a bank at Cody, Wyoming.

As to whether or not a deed of the plaintiff with a special warranty would meet the requirements of the contract under the circumstances, is a question not entirely free from doubt. The defendant knew that as to at least a portion of the property, the title was being held in trust as it concerned the administration of an estate in which the consent of a court was necessary to secure the approval for the same. Under such circumstances a deed with general warranties is not usually required. In any event, it would seem to be a matter of little consequence if the title were otherwise good, whether the deed contained a general warranty or only a special warranty with the grantor warranting the title only as against his own acts. If the title to the property is free and clear of encumbrance and without substantial defect, a quitclaim deed ought to be as effective in furnishing a good title as a warranty deed, if we should disregard the seemingly sacred reverence in which a warranty deed is held by the laity.

In the interest of doing equity, the plaintiff has tendered into court here in this proceeding, a deed with a special warranty, together with such releases of mortgages as will clear in the defendant title to the property in Cody for the benefit of the defendant and subject to the order of Court. I am of the opinion that this should be sufficient under all the circumstances as shown here to satisfy the defendant if he is desirous of completing this deal and becoming the owner of the property. I am also of the opinion that the testimony in this case, coupled with the agreement of the plaintiff to accept such sum, establishes the fair value of the property at $29,000. The evidence of additional value for oil possibilities is highly speculative and not worthy of much consideration. A part of the delay was possibly occasioned by the plaintiff in straightening out the title, but this is a fair valuation and amount to declare to be due and to be paid by defendant to plaintiff in the premises. There is some testimony to the effect that defendant has made substantial improvements upon the ranch property during the time of his occupying it, which if true and he desires to complete the contract, will redound to his benefit. On the other hand, if he does not so desire, his long period of occupancy of the premises without remuneration to the plaintiff other than the payment of $1,000

several years ago, ought to fairly compensate him for whatever improvements he has made upon the property while occupying it as a prospective purchaser.

My conclusion is, that the defendant should have an opportunity within ninety days from the entry of the decree in this case to deposit with the Clerk of this court the sum of $29,000, plus interest from the date of such decree to the date of such deposit, at the rate of seven per cent. per annum, and to receive the tendered deed on deposit, together with the releases of mortgages upon the Cody property and other instruments conveying title to defendant; and that in the event the defendant fails within such period of ninety days to take up said deeds by making the deposit aforesaid, that then and in that event, the plaintiff may take a decree of foreclosure of the contract covering said premises, such decree to provide for a sale of the premises after advertisement for six weeks in a paper regularly published in the County of Park, Wyoming, said sale to be to the highest bidder by the sheriff of said county, at the front door of the court house, both plaintiff and defendant to be given the privilege of becoming bidders at said sale, and that upon the consummation of such sale, the decree shall provide that the defendants shall be foreclosed of said property, or any part thereof, real or personal, together with all rights and equities of redemption therein. Such supplementary decree of foreclosure shall be in such form as may be agreed upon by counsel and the court, at which time the final disposition of the mortgages upon the Cody property will be determined. It will likewise be held that the plaintiff shall not be entitled to a deficiency judgment against the defendants provided the property shall not sell for the amount declared to be due upon the contract. The defendant is thereby placed in the position of being able to accept the deeds and releases of plaintiff in their present form or reject them, without danger of further liability. In the event foreclosure becomes necessary, to the said sum of $29,000 the accrued interest as herein defined may be added together with the costs of this suit to the plaintiff. Findings and conclusions and a decree may be submitted to the court by counsel within twenty days from the date hereof.